| | |
|---|---|
| DEBORAH THOMPSON,<br><br>   Plaintiff,<br><br>v.<br><br>PHARMACEUTICAL PRODUCT DEVELOPMENT, LLC,<br><br>   Defendant. | **COMPLAINT**<br><br>**JURY TRIAL DEMANDED** |

Plaintiff Deborah Thompson ("Ms. Thompson" or "Plaintiff") hereby complains and alleges against Defendant Pharmaceutical Product Development, LLC ("PPD") the following:

## NATURE OF THE ACTION

1. Plaintiff brings this action against Defendant for interference and retaliation under the Family Medical Leave Act, 29 U.S.C. § 2601, *et seq.* ("FMLA"), as amended.

2. Plaintiff brings this action against Defendant for discrimination based on disability and/or perceived disability disrimination and retaliation in violation of Title I of the Americans with Disabilities Act ("ADA") and the Americans with Disabilities Act Amendments Act of 2008, 42 U.S.C. § 12111, *et seq.*, as amended by the Americans with Disabilities Act Amendments Act of 2008 ("ADAAA") (collectively, "ADA").

3. Plaintiff also brings this action against Defendant for discrimination and retaliation based on age in violation of the Age Discrimination in Employment Act of 1967, as amended, 29 U.S.C. § 621, *et seq.* ("ADEA").

## PARTIES, JURISDICTION, AND VENUE

4. Ms. Thompson is a 61-year-old female and at all relevant times resided in Wilmington, North Carolina.

5. Defendant is a clinical research organization which provides drug development services in the pharmaceutical and biotechnology industries. PPD maintains its principal office and place of business in Wilmington, North Carolina, and is an employer within the meaning of the relevant laws and statutes.

6. This action arises under federal statutes including the FMLA, ADA and ADEA. This Court has jurisdiction over this matter pursuant to 28 U.S.C. § 1331 because the claims brought herein constitute a federal question under the laws of the United States.

7. Venue is proper in this judicial district pursuant to 28 U.S.C. § 1391 because Thompson was hired to work in this District and Defendant conducts business in this District.

## ADMINISTRATIVE EXHAUSTION

8. On October 1, 2020, Ms. Thompson filed a Charge of Discrimination with the Equal Employment Opportunity Commission ("EEOC") alleging disability discrimination, age discrimination, and retaliation.

9. On March 31, 2021, Ms. Thompson received a Notice of Right to Sue from the EEOC regarding the Charge and timely brought this action within ninety (90) days of receipt thereof.

10. Ms. Thompson has satisfied all private, administrative, and judicial prerequisites to the institution of this action.

## FACTUAL BACKGROUND

11. In or around December 1997, Ms. Thompson began her employment with PPD. She has held multiple roles within PPD during her employment.

12. Ms. Thompson has been a loyal employee for over 20 years.

13. During her employment, Ms. Thompson has received consistent positive performance reviews.

14. In or around July 2019, Thompson accepted a transfer from her position as Senior Manager of Operations to Senior Manager of Procurement.

15. In or around January 2020, she was informed that her position was being eliminated and was offered the choice to either (i) accept a four (4) month severance package under PPD's severance plan, or (ii) accept a transfer to her previous role as Senior Manager of Operations.

16. Ms. Thompson felt she had no other choice but to accept the transfer to her old role, and thus transferred back to the position of Senior Manager of Operations.

17. On or around May 18, 2020, Ms. Thompson underwent carpal tunnel surgery, Dupuytren's Contracture, and trigger finger surgery.

18. Carpal tunnel, Dupuytren's Contracture, and trigger finger are serious health conditions.

19. Carpal tunnel, Dupuytren's Contracture, and trigger finger are disabilities.

20. Carpal tunnel, Dupuytren's Contracture, and trigger finger are conditions that substantially limit Ms. Thompson's major life activities, including but not limited to the use and operation of her hands, typing, and writing.

21. Ms. Thompson was out of work for approximately seven (7) weeks for her serious health condition and utilized Family Medical Leave Act ("FMLA") leave.

22. During Ms. Thompson's protected leave of absence, she received a negative mid-year performance review from her manager, Peter Bolden ("Bolden"), while on leave.

23. The mid-year review claimed Ms. Thompson was a poor performer due to excessive absence during a time period that included her surgery and FMLA leave.

24. During her FMLA leave, Ms. Thompson was also repeatedly asked to perform work for PPD by Bolden which resulted in her working during her leave.

25. Ms. Thompson reported the retaliatory performance review to human resources.

26. During her FMLA leave, Ms. Thompson was repeatedly in contact with human resources about work-related issues and the mid-year review.

27. Ms. Thompson returned from her FMLA leave on or around August 4, 2020.

28. In or around September 2020, PPD restructured the Procurement team and created a new position of Associate Director.

29. The Associate Director position was given to Petia Mechkarova ("Mechkarova").

30. Mechkarova is significantly younger than Ms. Thompson and has less experience than Ms. Thompson.

31. Upon information and belief, Mechkarova was under the age of 40 at the time she was promoted to Associate Director.

32. Ms. Thompson was the employee who trained Mechkarova in 2014, along with the rest of the Sofia, Bulgaria team.

33. The Associate Director job opening was never posted for applications. Thus, Ms. Thompson did not have an opportunity to apply for the position.

34. Ms. Thompson was qualified for the Associate Director position.

35. PPD's failure to post the Associate Director position and/or promotion of Mechkarova was a departure from its established application and hiring process.

36. The Associate Director position would have been a promotion for Ms. Thompson, and would have resulted in her obtaining a raise and/or additional benefits.

37. In or around October 2020, Ms. Thompson had another surgery as a follow-up to her May 18, 2020 surgery. She again exercised her right to FMLA leave.

38. Ms. Thompson was repeatedly asked to work during this second FMLA leave and performed work during the leave.

39. Ms. Thompson returned from her FMLA leave on or around December 1, 2020.

40. Shortly after she returned to work from her protected leave, Ms. Thompson received her year-end performance review, administered by Peter Bolden and Mechkarova, which rated her as a 2/5 "More Expected."

41. The year-end review referenced Ms. Thompson's perceived lack of regular engagement and not being "current" with changes that occurred on the project.

42. The items referenced in the negative year-end performance review were directly related to Ms. Thompson's protected leave of absence and, as such, were retaliatory.

43. Upon information and belief, the negative year-end performance review affected Ms. Thompson's ability to obtain a raise or bonus and her ability to advance through the company.

44. Ms. Thompson did not receive a raise or bonus in March 2021.

45. This was the first time in her approximately 23 years with PPD that she did not receive either an annual raise or a bonus.

## COUNT I
### Interference - Family and Medical Leave Act of 1993 ("FMLA")
### 29 U.S.C. § 2614 *et seq.*

46. The foregoing paragraphs are incorporated herein by reference.

47. Defendant was well aware that Ms. Thompson had suffered a qualifying event under the FMLA.

48. Ms. Thompson submitted the required documentation showing that she had a qualifying event under the FMLA.

49. Defendant interfered with Thompson's protected FMLA leave by providing her a negative mid-year review while she was on leave.

50. Defendant interfered with Thompson's protected FMLA leave by requiring her to perform work during her leave.

51. Defendant's violation of the FMLA, 29 U.S.C. § 2615(a)(2), by interfering with Thompson's protective FMLA leave was willful and/or lacking of good faith.

52. Thompson has been damaged by Defendant's violation of the FMLA in as much as Thompson has suffered loss of past and future wages and benefits, loss of professional opportunities, emotional distress, and mental pain and anguish.

53. Thompson is entitled to her attorneys' fees and costs incurred in this matter pursuant to 29 U.S.C. § 2617(a)(3) of the FMLA.

54. Thompson is further entitled to any and all relief permitted under the FMLA, including equitable relief.

## COUNT II
### Retaliation - Family and Medical Leave Act of 1993 ("FMLA")
### 29 U.S.C. § 2601 *et seq.*

55. The foregoing paragraphs are incorporated herein by reference.

56. Defendant was well aware that Ms. Thompson had suffered a qualifying event under the FMLA.

57. Ms. Thompson submitted the required documentation showing that he had a qualifying event under the FMLA.

58. Ms. Thompson engaged in protected activity by taking FMLA leave.

59. Defendant retaliated against Thompson for taking FMLA leave by giving her a negative mid-year performance review during her leave that referenced her absence.

60. Defendant retaliated against Thompson for taking FMLA leave by giving her a negative year-end performance review shortly after she returned from leave.

61. Defendant retaliated against Thompson for taking FMLA leave by not providing her the opportunity to apply for the Associate Director position and not considering her for the Associate Director position, for which she was qualified.

62. Defendant's adverse employment actions were causally connected to Ms. Thompson's protected activity, as shown by the proximity in time between her taking FMLA leave and the adverse employment actions taken by Defendant.

63. Defendant's violation of the FMLA, 29 U.S.C. § 2615(a)(2), by retaliating against Ms. Thompson because she engaged in protected activity under the FMLA, was willful and/or lacking of good faith.

64. Ms. Thompson has been damaged by Defendant's violation of the FMLA in as much as Thompson has suffered loss of past and future wages and benefits, loss of professional opportunities, emotional distress, and mental pain and anguish.

65. Ms. Thompson is entitled to her attorneys' fees and costs incurred in this matter pursuant to 29 U.S.C. § 2617(a)(3) of the FMLA.

66. Ms. Thompson is further entitled to any and all relief permitted under the FMLA, including equitable relief.

## COUNT III
### Violation of Americans with Disabilities Act of 1990, as amended
### 42 U.S.C. § 12101, *et seq.*

67. The foregoing paragraphs are incorporated herein by reference.

68. Ms. Thompson is a "person" and an "employee," and Defendant is an "employer" and a "covered entity" as those terms are defined at 42 U.S.C. §12101, *et. seq.*

69. At all relevant times, Ms. Thompson was a qualified individual with an actual or perceived disability.

70. Dupuytren's Contracture, and trigger finger are disabilities within the meaning of the ADA.

71. Prior to her disability-related surgeries and leaves of absences, Ms. Thompson was performing her job at a level that met her employer's legitimate expectations.

72. Ms. Thompson notified Defendant of her disability and her injury, including communicating with her supervisors on a regular basis regarding his medical condition, emergency surgery and recovery status from her surgery.

73. Defendant discriminated and retaliated against Ms. Thompson for taking a disability-related leave by giving her a negative mid-year performance review during her leave that referenced her absence.

74. Defendant discriminated and retaliated against Ms. Thompson for taking a disability-related leave by giving her a negative year-end performance review shortly after she returned from leave.

75. Defendant discriminated and retaliated against Ms. Thompson for taking a disability-related leave by not providing her the opportunity to apply for the Associate Director position and not considering her for the Associate Director position, for which she was qualified.

76. Defendant's adverse employment actions were causally connected to Ms. Thompson's protected activity, as shown by the proximity in time between her taking disability-related leaves and the adverse employment actions taken by Defendant.

77. Ms. Thompson has been damaged by Defendant's violation of the ADA in as much as Ms. Thompson has been unable to use her education and training and has suffered loss of past and future wages and benefits, loss of professional opportunities, emotional distress, and mental pain and anguish.

78. Defendant's discrimination and retaliation was willful and/or lacking of good faith and Ms. Thompson is entitled to punitive damages pursuant to 42 U.S.C. § 12117(a).

79. Ms. Thompson is entitled to her attorneys' fees and costs incurred in this matter pursuant to 42 U.S.C. § 12205.

80. Thompson is further entitled to any and all relief permitted under the ADA, 42 U.S.C. § 12117(a), including equitable relief.

### COUNT IV
### Discrimination on the Basis of Age
### Violation of ADEA, 29 U.S.C. § 621, *et seq.*

81. The foregoing paragraphs are incorporated herein by reference.

82. Ms. Thompson was born in 1959 and was sixty-one (61) years old at the time of the adverse actions alleged herein.

83. Defendant treated Ms. Thompson less favorably than substantially younger employees by not considering her for the Associate Director position, not providing her an

opportunity to apply for the Associate Director, and promoting a much younger less qualified employee to the position.

84. Defendant violated the ADEA by discriminating against Ms. Thompson in whole or in part because of her age.

85. Defendant's acts described herein constitute a violation of the Age Discrimination in Employment Act's prohibition against age discrimination.

86. Defendant's conduct was willful and/or lacking of good faith.

87. As a proximate result of Defendant's wrongful conduct, Ms. Thompson has suffered lost wages and benefits, and other damages in an amount to be proven at trial. She is entitled to recover compensatory and liquidated damages in an amount to be proven at trial, including attorneys' fees and costs.

## **PRAYER FOR RELIEF**

WHEREFORE, Plaintiff Deborah Thompson demands the following relief:

1. An Order awarding Ms. Thompson damages for Defendant's violations of the FMLA, lost wages, front pay, lost employment benefits, and any other compensation denied or lost because of Defendant's violation of the FMLA;

2. An Order awarding Ms. Thompson damages for Defendant's violation of the ADA, including lost wages, front pay, lost employment benefits, and any other compensation denied or lost because of Defendant's violation of the ADA;

3. An Order awarding Ms. Thompson damages for Defendant's violation of the ADEA, including lost wages, front pay, lost employment benefits, and any other compensation denied or lost because of Defendant's violation of the ADEA;

4. An Order awarding Ms. Thompson compensatory damages for emotional distress, pain and suffering, inconvenience, and/or mental anguish in an amount to be proven at trial;

5. An Order awarding Ms. Thompson liquidated damages in an amount to be proven at trial;

6. An Order awarding Ms. Thompson punitive damages in an amount to be proven at trial;

7. An Order awarding Ms. Thompson the costs of this action;

8. An Order awarding Ms. Thompson reasonable attorneys' fees;

9. An Order awarding Ms. Thompson prejudgment and post-judgment interest at the highest rates allowed by law; and

10. An Order granting any other necessary or appropriate relief to which Ms. Thompson is entitled under the law.

## JURY TRIAL DEMAND

Ms. Thompson demands a trial by jury.

*/s/ L. Michelle Gessner*
L. Michelle Gessner, NC State Bar No. 26590
Nicole K. Haynes, NC State Bar No. 47793
John G. Hutchens, III, NC State Bar No. 52214
GESSNERLAW, PLLC
1213 Culbreth Drive, Suite 426
Wilmington, North Carolina 28405
Telephone: (844) 437-7637; Fax: (980) 206-0286
E-Mail: michelle@mgessnerlaw.com
nicole@mgessnerlaw.com
johnny@mgessnerlaw.com

*Attorneys for Plaintiff*